**Mae L. PRICE and Marva Shaw**

v.

**SERVICE TECHNOLOGY CORPORATION, LTV Aerospace, Inc., and Kentron of Hawaii, Ltd.**

No. CA 3–74–750–C.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 15, 1978.

Linda N. Coffee, Palmer, Palmer & Coffee, Dallas, Tex., for plaintiffs.

William L. Neary, Dallas, Tex., for defendants.

MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiffs Mae L. Price and Marva Shaw were employed by Defendant Service Technology Corporation during the summer of 1968 and were laid off in May of 1972 due to a lack of work.

Subsequently, they filed this civil action alleging that they and a similarly situated

class were discriminated against by Defendants because of their race, Black, under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981 and 28 U.S.C. § 1343.

Plaintiffs essentially abandoned their class action allegations in their Pre-Trial Memorandum brief filed September 19, 1977. They did so because they could not meet the numerosity requirements of Rule 23(a) of the Federal Rules of Civil Procedure. From the evidence presented this would appear to be so, and the Court so finds and concludes that a class could not be properly constituted.

Plaintiffs did file charges with the Equal Employment Opportunity Commission alleging there the same acts of discrimination that they have alleged here. Both of these charges were filed before they were laid off by Defendant Service Technology Corporation.[1] Subsequent to their layoffs, they filed additional charges with the E.E. O.C. alleging retaliation on the part of STC because of their filing of the previous charges. The retaliation charges have since been dropped by Plaintiffs.

There is no controversy as to Plaintiff Price's timely filing of the civil action within the 90-day period after she received her notice of right to sue from the District Director of the E.E.O.C.[2] Based on the evidence presented to the Court, the Court finds that Mrs. Price did file within the 90-day period as to her claims alleged in this civil action and concludes that it does have jurisdiction.

The parties have stipulated that one right to sue notice was issued to Mrs. Shaw. This notice was issued on April 29, 1974, and was only pertinent to her charge of retaliation. Therefore, she has not received a notice of right to sue as to allegations that she has made in the complaint in this civil action. The Court cannot therefore find that she has received a notice to sue as to these charges or that she filed this civil action

within 90 days of the receipt of a pertinent notice of right to sue and must conclude that it does not have jurisdiction over Mrs. Shaw. But her claims will be discussed along with Mrs. Price's for the sake of this opinion and any possible appellate review.

At the outset, it would be best to set out in short form the business of Defendant as related to the Plaintiffs' employment. Defendant would secure contracts with the Federal Government, such as the one that Plaintiffs worked on. That contract was with the Army Electronics Command.

What Defendant's employees would do is to take the plans, specifications and other documents relating to a piece of equipment that the Army, Navy or Air Force was going to deploy in the field and list the parts. Then they would compare them to a general listing of parts maintained by the Government to ensure conformity with federal specifications. They then would determine the frequency of repair for the various components and elements of components, which parts should be replaced in the field, which should be repaired or replaced at a parts depot and which should only be replaced. They would also determine which replacement parts should be carried along with the equipment, which should be held at some depot or another and which should only be ordered from a supplier as needed. They also determined what tools would be needed at what location to effectuate repairs. They also developed the maintenance manuals for the equipment which covered both preventive maintenance and repair.

Of course, the sophistication of the equipment could and would vary tremendously. The more sophisticated the equipment, the more knowledgeable and trained the personnel of Defendant had to be to do the actual contract work and to coordinate the contract work.

█ I. When the Plaintiffs were hired in the summer of 1968, they were hired as

---

1. On February 3, 1973, Service Technology Corporation was merged into its parent, LTV Aerospace Corporation, and its assets were placed into another subsidiary, Kentron of Ha-

waii, Ltd. For the purposes of this opinion, they will be treated collectively as STC.

2. § 706(f) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5.

Parts Listers "B," Labor Grade 3, at a salary of $366.00.

Besides their job description, there were seven other job descriptions in their department, all higher in level. They were, in ascending order, Parts Lister "A," Labor Grade 5; Senior Parts Listers, Labor Grade 6; Data Documentation Analysts, Labor Grade 22; Senior Data Documentation Analysts, Labor Grade 24; a Logistics Requirement Specialist, and a Technical Publications Editor.

Mr. Manuel Yglesias and Mr. Harry Fry, the Plaintiffs' superior, and his superior, set out in their testimony for Defendant the job descriptions for each of these positions in great detail. The sum of both Plaintiffs' testimony was that each person in the department was doing the "same" work. It is without dispute that the whole department was working on one or another similar contract with the Federal Government while the Plaintiffs were employed by Defendant and that the Plaintiffs only worked on one particular contract. It is dubious at best that Plaintiffs have established a prima facie case of discrimination by testifying that everyone in the department was doing the "same" work. Particularly so as the Plaintiffs could not at trial explain to much of any degree what they themselves did while employed by Defendant.

It is clear from the testimony of Mr. Yglesias and Mr. Fry that there were substantial differences in the positions occupied by various members of the department.[3]

Besides the Plaintiffs, four other persons were hired as Parts Listers "B," Labor Grade 3, in the Supply Support Section of Defendant. All four were Caucasians. Two were hired at the same salary as Plaintiffs and two at a slightly higher salary. The two with higher salaries ($375.00 and $390.00 as opposed to $366.00) were already employed when hired by Defendant. Plain-

tiffs and the other two Caucasians were unemployed when hired. To put it simply, Defendants had to offer more money to the already employed applicants in order to hire them. This shows no discrimination against Plaintiffs in hiring.

There were five persons employed as Parts Listers "A," Labor Grade 5, in 1968. Four Caucasians and one American-Indian.[4] Three of these employees had had job experience related to parts listing and the fifth was just out of school where he had had electrical engineering training which of course was pertinent to parts listing for the Army Electronics Command and showed at his pre-employment interview that he was capable of handling the higher job classification work because of his schooling. So Plaintiffs again have not shown that they were discriminated against in hiring.

■ II. Neither have Plaintiffs shown that they were discriminated against in promotions. Their record must logically be compared to the record of the other four Parts Listers "B," Labor Grade 3, hired in 1968 in order to determine if they were not promoted for discriminatory reasons.

The first of the other four was laid off on June 19, 1969. She was never promoted and never had a merit increase and was making $36.00 per month less than Price and $52.00 per month less than Shaw when laid off.

The second other Parts Lister "B" was laid off on July 25, 1969. She, too, was not promoted and did not receive any merit increases. She was being paid the same as Price and $18.00 per month less than Shaw when laid off.

On April 23, 1971, the third Parts Lister "B" was laid off without being promoted and having received one merit increase. At that time she was being paid $4.00 per month less than Price and $32.00 per month less than Shaw.

---

**3.** In order to conserve space the various job descriptions will not be set out but the Court specifically finds that such job descriptions are valid.

**4.** The American-Indian was employed in a position that normally required parts listing experi-

ence and secretarial skills. As there was no one available with both skills, this person with the required secretarial skills was hired at a lower than usual salary for the position which was the same salary as Plaintiffs.

The fourth other Parts Lister "B," a female, did receive five merit increases while Plaintiffs were employed by Defendant and a promotion to Parts Lister "A." After Price and Shaw were laid off, she was again promoted.

During their employment by Defendant neither Plaintiff was promoted but Plaintiff Price did receive three merit increases and Plaintiff Shaw had four.

It cannot be said that Plaintiffs have carried their burden of proof to show a prima facie case of discrimination against them as to promotion. That one Caucasian female out of the other four was promoted and the other three laid off at earlier times than Plaintiffs is absolutely no evidence of discrimination against Plaintiffs as to promotion.

Beyond this, Mr. Yglesias, a member of another minority, was quite clear and credible in his testimony about Plaintiffs' competency to perform their work. He noted that Plaintiff Shaw had made steady progress as to her job skills from the day she was hired until the day she was laid off. He also noted that Plaintiff Price had been more of a problem. She needed more supervision, had a problem with attendance at work in earlier years, and had been laid off for five months in 1970.

The testimony was that had Defendant obtained a follow-up contract to the one that Plaintiffs were working on, they either would have been promoted or it would have been more likely that they would be promoted to Parts Listers "A."

It is quite impossible to say that Plaintiffs were discriminated against because of their race or sex, in the face of the careful testimony of Mr. Yglesias and Mr. Fry as to their work history and their clearly articulated non-discriminatory reasons for the non-promotion of the Plaintiffs before their lay-off versus the testimony of the Plaintiffs that they were all doing the "same" work. Mr. Yglesias did testify that when a higher level employee finished a task, there might not be a task for her or him to do that required the full competency of that level and that that person would be assigned to do work at a lower level. But this shows nothing more than a variation in the difficulty of assignable tasks and a lack of a 100% correlation between skills needed for an entire contract and skills needed for work related to a particular piece of equipment.

III. In summation, it would be difficult to say that Plaintiffs have established a prima facie case of discrimination against them. Not only could they not distinguish between the level of competency required for the seven different job descriptions in their department in their testimony; they could not describe the tasks that they performed for Defendant so as to bolster their contentions that everyone was doing the same work. No doubt, the five years between their layoffs and the trial in this cause would have the effect of dimming their memories but their almost total lack of recall versus the careful and fully plausible explanations of their superiors shows no discrimination against them by Defendants. No violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. or of 42 U.S.C. § 1981 have been shown. Accordingly, judgment will be rendered that Plaintiffs take nothing by their suit against Defendants.